## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DONZELL GALVIN,

                    Petitioner,                  Case Number: 2:06-CV-14515

v.                                      HONORABLE VICTORIA A. ROBERTS

CARMEN PALMER,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF
## HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Donzell Galvin filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, a state inmate incarcerated at the Michigan Reformatory in Ionia, Michigan, challenges his convictions for two counts of first-degree murder. Respondent argues that the petition should be denied because the claims are without merit and/or procedurally defaulted.

The Court denies the petition.

## I.    Facts

Petitioner's convictions arise from the deaths of his ex-girlfriend, Rochelle Sevilla ("Sevilla"), and her mother, Laura Lugo ("Lugo").

These victims lived in a duplex home in Bay City, Michigan with Sevilla's children. Trisha Martin ("Martin"), Sevilla's sister, lived in the other half of the duplex

1

with her children and grandmother.

Martin testified that, during the early morning hours of August 5, 2002, she was awakened by someone yelling to get out of the house. Martin went to her front door and saw her naked and bloody sister kicking in the door to her own home. Martin testified that Sevilla repeatedly said, "Donzell did it." A passerby helped Sevilla break the door down and Sevilla got her two small children (whose father is Petitioner) from the house. The children survived, but were hospitalized for several days.

Martin and her family escaped the burning home. Lugo was found dead in her bed. She died from multiple stab wounds to her neck.

Sevilla was taken to the hospital where she gave a statement to police officer Todd Armstrong. Sevilla stated that she and Petitioner ended their relationship approximately two months prior to his attack. Petitioner awakened her by holding steak and butcher knives to her throat and side. He ordered her to the kitchen and raped her. He kicked, stabbed and choked her. Sevilla stated that Petitioner turned on the gas and fled the home. Sevilla died in the emergency room a few hours later.

Fire investigators testified that the house fire was intentionally set. It had two separate starting points, both of which were triggered by an ignitable liquid.

David Bicigo, a forensic science manager for the Michigan State Police Crime Lab, testified that he tested several items from the scene of the crime, and processed a rape kit. Bicigo testified that gasoline cans from Petitioner's car had his fingerprints on them. Petitioner's boots had Sevilla's and Lugo's blood on them. Petitioner's jeans had

2

five separate bloodstains which matched Sevilla's DNA profile. Sevilla's rape kit showed the presence of Petitioner's semen.

Petitioner testified in his own defense. He testified that his relationship with Sevilla ended amicably. According to Petitioner, he had consensual sex with her the night before she died. He denied any involvement in the killings or fire.

## II.   Procedural History

A Bay County Circuit Court jury convicted Petitioner of two counts of first-degree murder. On January 14, 2004, he was sentenced to two concurrent terms of life imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising a claim that he was denied his right to counsel at trial. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Galvin*, No. 253406, 2005 WL 1160650 (Mich. Ct. App. May 17, 2005). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claim. The Michigan Supreme Court denied leave to appeal. *People v. Galvin*, 474 Mich. 908 (Mich. Oct. 31, 2005).

Petitioner filed a petition for a writ of habeas corpus raising the same claim. The Court granted Petitioner's request to hold these proceedings in abeyance so that he could return to state court to exhaust seven unexhausted claims.

Petitioner filed a motion for relief from judgment in the trial court raising these claims:

I.      The trial court clearly erred in allowing out of court testimonial statements

3

of the decedent into evidence in violation of his Sixth Amendment right of confrontation and due process right to a fair trial.

II.     The trial court abused its discretion when it allowed the prosecution to play for the jury a 911 audio tape recording. This violated defendant's Sixth and Fourteenth Amendment right to confrontation and due process right to a fair trial.

III.    The trial court erred by not assigning a DNA expert to the defense and when it allowed DNA evidence in the form of a report, where the co-signer was not called as a witness. This was in violation of defendant's constitutional rights to confrontation and due process right to a fair trial.

IV.     Defendant was denied the effective assistance of appellate counsel because counsel failed to raise issues that were obvious and significant.

V.      Defendant is entitled to relief from judgment where the "irregularity was so offensive to the maintenance of a sound judicial system."

VI.     The trial court abused its discretion when it allowed an in-court identification of defendant. Pretrial identification of defendant and his vehicle was tainted by pretrial publicity. It was also suggestive and conducted without defendant's counsel, violating defendant's constitutional and due process rights.

VII.    Defendant was denied his Fourth and Fourteenth Amendment right to a fair trial where evidence under an "insufficient and generalized bare bones" affidavit and search warrant was allowed into evidence.

The trial court denied the motion, finding the claims defaulted because Petitioner failed to show good cause for failing to raise them on direct appeal. In the alternative, the court found the claims meritless. *People v. Galvin*, No. 02-10692 (Bay County Cir. Ct. Aug. 23, 2007). The Michigan Court of Appeals denied leave to appeal for failing "to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Galvin*, No. 286468 (Mich. Ct. App. Nov. 10, 2008).

4

Petitioner attempted to file an application for leave to appeal in the Michigan

Supreme Court.  The application was not accepted because it was filed beyond the 56-day

time period.  *See* Affidavit of Corbin R. Davis, Clerk, 3/30/10.

The Court granted Petitioner's motion to reopen these proceedings on January 28,

2010.  In addition to his denial of right to trial counsel claim, Petitioner raises the same

claims he raised on direct and collateral review in state court.

**III.    Standard**

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,

5

529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Discussion

### A.    Right to Counsel

Petitioner had three court-appointed attorneys.  He complained that all were racist, working with the prosecutor, and not protecting his best interests.  The trial court granted the first two attorneys' motions to withdraw, but denied Petitioner's request that the third one be replaced.  Petitioner then expressed a desire to represent himself.  The trial court scheduled a hearing for one week after Petitioner made that request -- to give Petitioner

7

time to reflect on the seriousness of his request.  After the hearing, the trial court granted Petitioner's request and directed Petitioner's third court-appointed attorney to serve as stand-by counsel.  Petitioner claims that his request to represent himself at trial was equivocal and that the trial court's acceptance of his request and failure to appoint substitute counsel violated his right to counsel.  Respondent argues that Petitioner's claim lacks merit.

Because Petitioner's request to represent himself was knowing and unequivocal, the Court denies this claim.

The Sixth Amendment guarantees a defendant the right to the assistance of counsel, but a defendant has the right to refuse such assistance and conduct his own defense.  *Faretta v. California*, 422 U.S. 806, 832–36 (1975).  A defendant's assertion of the right to self-representation must be analyzed as a waiver of the right to counsel; as such, the waiver must be "'knowing, voluntary, and intelligent.'"  *Akins v. Easterling*, 648 F.3d 380, 394 (6th Cir. 2011) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)).  "A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation."  *Id.* (quoting *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995)) (alteration omitted).  A habeas petitioner bears the burden of proving he "'did not competently and intelligently waive his right to the assistance of counsel.'"  *Id.*, (quoting *Tovar,* 541 U.S. at 92).

8

The Michigan Court of Appeals, citing *Faretta* and state court cases applying

*Faretta*, denied the claim.  The court held that the trial court went to great lengths to

ensure that Petitioner's waiver of the right to counsel was unequivocal and knowing and

that the waiver was, in fact, unequivocal and knowing.  The state court reasoned:

> [T]he trial court conducted a hearing to determine if defendant
> intentionally, voluntarily, and unequivocally waived his right to
> representation.  Plaintiff noted that he consulted with [third appointed
> counsel] Mr. Proschek and affirmatively reiterated his desire to represent
> himself because he could not secure proper representation from his
> appointed attorneys.  Following extensive and detailed questioning,
> defendant indicated that he understood that he had a right to representation.
> He stated that he understood the serious nature of the charges against him
> and his potential sentence.  The court insured that defendant understood the
> dangers of representing himself. [ ] The trial court fully explained the nature
> of stand-by counsel, and defendant asserted that he understood, as he had
> also represented himself with the assistance of stand-by counsel in the
> probate court matter. [ ] Defendant stated that no one forced or coerced him
> into making this decision. . . . The trial court granted defendant's motion to
> represent himself and sua sponte appointed Mr. Proschek as stand-by
> counsel.  Defendant felt that Mr. Proschek would hinder his case and fail to
> give him proper advice.  However, the trial court denied his motion for
> substitute stand-by counsel, as defendant made no specific allegations
> regarding the inadequacy of Mr. Proschek's representation. [ ]
>
> At this hearing, defendant validly waived his right to counsel.  Defendant
> made a clear and unequivocal request to represent himself.  The trial court's
> detailed questioning insured that defendant understood the disadvantages of
> self-representation and that his self-representation would not disrupt or
> burden the court. . . .
>
> The trial court also properly complied with M.C.R. 6.005(E) by affirming at
> all subsequent proceedings that defendant intended to continue to represent
> himself.  At each subsequent pretrial hearing, the court reminded defendant
> that he had a right to counsel, not necessarily of his choosing, and asked if
> defendant continued to waive his right. . . .
>
> Although defendant invoked his right to counsel at the close of one pretrial

9

> hearing, he refused court-appointed counsel and reinstated his waiver at the
> start of trial following further questioning. . . . The trial court's efforts to
> insure that defendant wanted to continue to represent himself were more
> than adequate.

*Galvin*, 2005 WL 1160650, at *2-3.

"[T]he essential aim of the [Sixth] Amendment is to guarantee an effective
advocate for each criminal defendant rather than to ensure that a defendant will
inexorably be represented by the lawyer whom he prefers." *Wheat v. U.S.*, 486 U.S. 153,
159 (1988). A criminal defendant may not "stop the criminal justice system in its tracks"
by rejecting appointed counsel for no justifiable reason and refusing self-representation.
*Swiger v. Brown*, 86 F. App'x 877, 882 (6th Cir. 2004). A criminal defendant has "'no
right to indefinite delays while he tries on new lawyers unless he has a reason for
dissatisfaction with the old.'" *King v. Bobby*, 433 F.3d 483, 493 (6th Cir. 2006) (quoting
*U.S. v. Oreye*, 263 F.3d 669, 671 (7th Cir. 2001)). The record shows that the trial court
successfully and carefully balanced Petitioner's right to counsel, but not to the counsel of
his choice, and Petitioner's expressed desire to represent himself if the court did allow his
third court-appointed attorney to withdraw.

The Michigan Court of Appeals' finding that Petitioner's waiver of counsel was
knowing, voluntary and unequivocal is reasonable and not contrary to the holding in
*Faretta*. Relief is denied on this claim.

## B.    Procedural Default

Respondent argues that the remainder of Petitioner's claims are procedurally

defaulted because they were not exhausted in state court and no means for exhausting them remains available to Petitioner.

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A prisoner's "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Rees*, 822 F.2d 1418, 1420 (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden to show that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3. If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his

11

defense at trial or on appeal.  *Id.*, *citing Coleman*, 501 U.S. at 750-51.

Petitioner raised his final seven claims for the first time on collateral review in state court.  The trial court denied his motion for relief from judgment and the Michigan Court of Appeals denied leave to appeal.  The Michigan Supreme Court did not accept Petitioner's application for leave to appeal because it was untimely.  Therefore, Petitioner did not properly exhaust these claims.

Petitioner argues that he has cause to excuse his procedural default of these claims because he gave his application for leave to appeal to prison officials prior to the filing deadline and, if the mailbox rule applied, the application to the Michigan Supreme Court would have been timely. (Pursuant to a 2010 amendment to the Michigan Court Rules, Michigan courts now recognize a prison mailbox rule, which allows an application for leave to appeal to be deemed presented for filing when a *pro se* inmate places it in the prison's outgoing mail.  Mich. Ct. R. 7.205(A)(3).  The mailbox rule applies only to applications for leave to appeal from decisions rendered on or after March 1, 2010.  *Id.*)

The Sixth Circuit Court of Appeals held that "[w]here a *pro se* prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, . . . the rule is sufficient to excuse a procedural default based upon a late filing."  *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003).  The Sixth Circuit held that providing prison officials with a pleading five days before the filing deadline is sufficient time for it to arrive timely.  *Id.* at 438-89 (citing *Mohn v. Bock*, 208 F. Supp.2d 796 (E.D. Mich. 2002)).

12

To be timely, Petitioner's application for leave to appeal to the Michigan Supreme Court had to be filed on or before January 5, 2009. Petitioner submitted his application to prison authorities for mailing on that same date. Submitting the application for mailing on the due date virtually ensured that the application would be untimely. *Accord Donnal v. Sheets*, No. 3:08 CV 932, 2009 WL 31216404, * 3 (N.D. Ohio Sept. 24, 2009) (delivery of petition to prison mail room only three days before filing deadline was not "sufficient time for it to arrive timely").

The untimely filing of Petitioner's application for leave to appeal cannot fairly be attributed to any action or inaction of prison officials. That the application was received by the Michigan Supreme Court one day after Petitioner submitted it for filing shows that prison officials acted promptly in handling Petitioner's legal mail. "A showing of cause requires more than the mere proffer of an excuse." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

Petitioner fails to establish cause to excuse his procedural default . Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851 (1995).

The Supreme Court tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327.

13

Petitioner fails to present new, reliable evidence that a reasonable juror would have relied on to find him not guilty.  Therefore, these claims are procedurally barred.

## V.      Certificate of Appealability

Federal Rule of Appellate Procedure 22 says that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court denies a certificate of appealability.

## VI.     Conclusion

The petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

A certificate of appealability is **DENIED**.

**IT IS ORDERED.**

14

S/Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

DATE:  9/10/2012